IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:21-cv-711

| | |
|---|---|
| VANESSA NARIO, | ) |
| Plaintiff, | ) |
| v. | ) **COMPLAINT** |
| | ) **JURY TRIAL DEMANDED** |
| NATIONAL ONDEMAND, INC., | ) |
| Defendant. | ) |

COMES Now Plaintiff Vanessa Nario ("Ms. Nario"), by and through undersigned counsel, complaining of Defendant National OnDemand, Inc. ("Defendant"), alleges and says the following:

## INTRODUCTION

1. This is an action to recover damages and civil penalties arising from Defendant's discharge of Ms. Nario in retaliation for her reports of Defendant's misconduct related to its I-9 verification and business registration practices, expressly stating that Ms. Nario was being fired for "trying to find problems with the company." Defendant's actions towards Ms. Nario were done in violation of the anti-retaliation provisions of the False Claims Act, 31 U.S.C. § 3730(h) ("FCA") and constitute a wrongful discharge under the common law of North Carolina.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 31 U.S.C. § 3732.

3. A substantial part of the unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Middle District of North Carolina.

1

4. This Honorable Court has personal jurisdiction over Defendant because Defendant conducts business in the State of North Carolina.

5. This Honorable Court should assume supplemental jurisdiction of Ms. Nario's state law claim pursuant to 28 U.S.C. § 1367(a) because this claim is based upon the same operative facts as the FCA claims over which this Honorable Court has jurisdiction and judicial economy, convenience, and fairness to the parties demand that this Honorable Court assume and exercise jurisdiction over the claims alleged herein.

6. Venue is proper in this Honorable Court under 28 U.S.C. § 1391(c) because Defendant maintains its business within this judicial district, transacts business within this judicial district, and committed acts complained of within this judicial district.

## PARTIES

7. Ms. Nario is a resident of Durham County, North Carolina. She was employed as a Human Resources Specialist with Defendant from June 29, 2020 through July 21, 2020.

8. As a direct result of her employment with Defendant, Ms. Nario gained personal knowledge of the illegal practices hereinafter described, by which Defendant obtained funds through false certifications of compliance to the Government.

9. Defendant is an Indiana corporation with its principal place of business in Burlington, North Carolina.

10. Defendant regularly and systematically conducts business in the State of North Carolina.

11. At all times relevant to this action, Defendant was an "employer" under the FCA and North Carolina common law.

# **FACTS**

*Defendant Submits Fraudulent Application for Loan to U.S. Small Business Administration*

12. At some time prior to April 7, 2020, Defendant submitted an application for payment pursuant to the Paycheck Protection Program to the United States Small Business Administration ("S.B.A.").

13. Upon information and belief, Defendant's application was done on the S.B.A.'s Borrower Application Form (OMB Control No.: 3245-0407).

14. Upon information and belief, in making its application for payment to the S.B.A. Defendant certified that it was "not engaged in any activity that is illegal under federal, state or local law." Pursuant to 13 CFR § 120.110, businesses "engaged in any illegal activity" are ineligible for any type of Small Business Administration business loans.

15. At the time it made this certification, Defendant knew that it was false, and that Defendant was illegally submitting I-9 forms to the U.S. Citizenship and Immigration Services without properly certifying prospective employees.

   a. The Form I-9 states that employers "must physically examine" the documents from the list of acceptable documents. Please see example of Form I-9 attached hereto as Exhibit A.

   b. Further, the employer or its authorized representative must certify on the Form I-9 that "I have examined the document(s) presented by the above-named employee…"

   c. Defendant knew, therefore, from the plain language of the Form I-9 that it was illegally submitting these forms without properly certifying prospective employees.

   d. In requiring its Human Resources staff to illegally submit Form I-9s, Defendant was knowingly requiring its employees to perjure themselves.

  e. "Whoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 1622.

16.  At the time it made this certification, Defendant also knew that it was false as Defendant was conducting business operations in Tennessee and Kentucky, states where it was not registered to do so.

  a. Under Tennessee law, "a foreign corporation, except a foreign insurance company subject to title 56, may not transact business in this state until it obtains a certificate of authority from the secretary of state." Tenn. Code Ann. § 48-25-101(a). "A foreign corporation which transacts business or conducts affairs in this state without a certificate of authority shall be liable to this state, for the years or parts thereof during which it transacted business or conducted affairs in this state without a certificate of authority, in an amount equal to treble the amount of all fees, penalties and taxes, plus interest, which would have been imposed by the laws of this state upon such corporation had it duly applied for and received a certificate of authority as required by this chapter, and thereafter had failed to file all reports required." Tenn. Code Ann. § 48-25-102(d).

  b. Under Kentucky law, "a foreign entity shall not transact business in this Commonwealth until it obtains a certificate of authority from the Secretary of State." Ky. Rev. Stat. Ann. § 14A.9-010. "A foreign entity is liable for a civil penalty of two dollars ($2) for each day it transacts business in this Commonwealth without a certificate of authority. The Secretary of State may collect all penalties due under this subsection." Ky. Rev. Stat. Ann. § 14A.9-020(4).

4

Case 1:21-cv-00711-WO-JEP   Document 1   Filed 09/13/21   Page 4 of 12

17. Upon information and belief, at some time prior to April 7, 2020, the S.B.A. approved Defendant's application for payment pursuant to the Paycheck Protection Program ("PPP").

18. The S.B.A.'s decision regarding Defendant's application for payment was based on Defendant's false representation that it was not engaged in any activity that was illegal under federal or state law.

19. The United States Department of Justice considers statements and certifications made to receive funding under the Paycheck Protection Program to be subject to the False Claims Act. *See* Two Charged in Rhode Island with Stimulus Fraud (2020), https://www.justice.gov/opa/pr/two-charged-rhode-island-stimulus-fraud.

20. Upon information and belief, the S.B.A. made payment to Defendant in the amount of $3,238,400.00 pursuant to Defendant's application for payment.

*Defendant Fires Ms. Nario in Retaliation for her Attempts to Stop Defendant's Violations of False Claims Act*

21. Defendant hired Ms. Nario as a Human Resources Specialist on June 29, 2020.

22. At the time Defendant hired Ms. Nario, she had a bachelor's degree from North Carolina State University and an Associate Professional in Human Resources Certification.

23. One of Ms. Nario's responsibilities as a Human Resources Specialist was to onboard both W-2 and 1099 workers for Defendant.

24. In order to complete the onboarding process, Ms. Nario was legally required to certify each prospective employee's I-9, the federal form that verifies an individual is legally eligible to work in the United States.

25. In order to certify an I-9, an employer's representative is required to physically examine the required documents and "attest, under penalty of perjury, that (1) I have examined the

document(s) presented by the above-named employee, (2) the above-listed document(s) appear to be genuine and to relate to the employee named, and (3) to the best of my knowledge the employee is authorized to work in the United States."

26. On July 16, 2020, Defendant asked Ms. Nario to certify an I-9 using a photograph of the prospective employee's birth certificate, stating that this was Defendant's standard procedure.

27. Ms. Nario could not verify the authenticity of the birth certificate based solely on a photograph of the document.

28. Further, upon closer examination, Ms. Nario discovered that the photographed birth certificate did not contain a document number, which birth certificates are required to have.

29. Because she could not truthfully attest to the statement, Ms. Nario would not certify the I-9.

30. Instead, Defendant had one of Ms. Nario's co-workers in Human Resources certify the I-9, using the prospective employee's social security number, even though Defendant did not have a copy of the prospective employee's social security card, as is required for the I-9 certification.

31. At all times relevant to this Complaint, including during Defendant's application for payment under the PPP, Defendant's regular I-9 certification process did not mandate the proper verification of prospective employee's required documents.

32. At all times relevant to this Complaint, including during Defendant's application for payment under the PPP, Defendant knew that its regular I-9 certification process was illegal.

33. Concerned about Defendant's regular and casual disregard for the I-9 certification process, Ms. Nario contacted the United States Citizenship and Immigration Service (USCIS) on July 17, 2020 for an advisory opinion.

34. USCIS confirmed that Defendant was violating the I-9 certification requirements and that Ms. Nario's co-worker had perjured herself when certifying the prospective employee's I-9.

35. Immediately following her conversation with USCIS, Ms. Nario e-mailed Defendant's Human Resources Director Tonya Spivey, alerting her of Defendant's illegal I-9 verification process. A copy of Ms. Nario's July 17, 2020 e-mail is attached hereto as Exhibit B.

36. Specifically, Ms. Nario told Ms. Spivey that "Completing the [I-9] with this information is considered perjury and there could be huge financial penalties… I was assuming that there must be some exception that we fall into, and that this is why we do the [I-9]'s the way we do… I'm unsure what to do but I know that you needed to be made aware, since it sounds like a pretty big deal. For the time being, until we have resolved this, I would like to please NOT do any I-9s, since doing so can be considered perjury."

37. Ms. Nario's report to Ms. Spivey was made out of a concern that Defendant would be subject to liability under the False Claims Act or other criminal statutes as a result of the I-9 verification process Defendant had in place.

38. In fact, the forgiveness of loan amounts paid to Defendant pursuant to the PPP would be threatened by Ms. Nario's disclosure that Defendant had made a material fraudulent misrepresentation to the S.B.A. during its PPP application.

39. Ms. Nario's report to Ms. Spivey put Defendant on notice of Ms. Nario's concerns about Defendant's liability for the fraudulent misrepresentations.

40. Ms. Spivey responded that Ms. Nario was incorrect and that Defendant's processes were compliant with the applicable laws. A copy of Ms. Spivey's response to Ms. Nario is attached hereto as Exhibit C.

41. Specifically, Ms. Spivey told Ms. Nario to "continue to follow the process outlined until you hear back from me…"

42. Spurred by Ms. Nario's report to USCIS, Ms. Spivey held a meeting on July 20, 2020 with her Human Resources staff to advise everyone that the I-9 verification process Defendant had been using, including during the time that Defendant submitted its PPP application, was illegal and not in compliance with the applicable federal laws.

43. In spite of admitting that their processes were illegal, Ms. Spivey instructed her staff to continue to follow the illegal processes, including requiring that the staff perjure themselves in executing the I-9 forms.

44. Worried by Defendant's insistence that its illegal policies were correct, Ms. Nario began to review other aspects of Defendant's business to ensure that they complied with all applicable laws and regulations.

45. On July 21, 2020, Ms. Nario learned that Defendant was not registered or in good standing in several states where it had employees conducting business operations, including Tennessee and Kentucky.

46. Ms. Nario e-mailed Defendant about her findings at 4:40 p.m. on July 21, 2020.

47. At 4:55 p.m., Ms. Spivey summoned Ms. Nario back to her office, at which point she fired her for "trying to find problems with the company." See copy of Ms. Spivey's July 21, 2020 e-mail confirming Ms. Nario's account of the conversation attached hereto as Exhibit D.

8

Case 1:21-cv-00711-WO-JEP   Document 1   Filed 09/13/21   Page 8 of 12

## COUNT I – FALSE CLAIMS ACT
### Retaliation, 31 U.S.C. § 3730(h)

48. The allegations contained in the preceding paragraphs are incorporated herein by reference as if fully set forth.

49. Ms. Nario is an "employee" and Defendant is an "employer" as the terms are defined by the FCA.

50. Defendant made a false statement to the federal Government in certifying that it was "not engaged in any activity that is illegal under federal, state or local law" as part of its application for payment pursuant to the Paycheck Protection Program.

51. Ms. Nario is presently aware that Defendant was engaged in at least two practices that were illegal under federal and state law. First, Defendant was regularly forcing its human resources staff to perjure themselves in submitting I-9 Forms without physically examining documents. Second, Defendant was conducting business in Tennessee and Kentucky without being authorized to do so in direct contradiction to those states' laws.

52. Defendant's false statement was material to the Government's determination to pay Defendant's claim.

53. At the time Defendant made this false statement to the Government, it was aware that it was engaging in illegal business practices.

54. Based upon Defendant's misrepresentation, the Government paid Defendant $3,238,400.00.

55. Defendant admitted to firing Ms. Nario for investigating whether Defendant was engaged in other illegal practices.

56. Ms. Nario engaged in protected activity when she would not comply with Defendant's illegal and improper I-9 certification process and reported the same to USCIS and Defendant's management.

57. Defendant knew that Ms. Nario engaged in activity protected by the FCA.

58. Defendant knew that Ms. Nario was concerned about Defendant's potential violation of the False Claims Act or other criminal statutes related to perjury as a result of the I-9 verification process Defendant had in place.

59. Defendant, knowing that Ms. Nario was engaging in such activity, fired her because of this protected conduct.

60. To redress harms she suffered as a result of Defendant's acts and conduct in violation of 31 U.S.C. § 3730(h), Ms. Nario is entitled to damages, including two times the amount of back pay, interest on back pay, and compensation for any special damages, including emotional distress and any other damages available by law including litigation costs and reasonable attorneys' fees.

## COUNT II – WRONGFUL DISCHARGE

61. The allegations contained in the preceding paragraphs are incorporated herein by reference as if fully set forth.

62. It is North Carolina's public policy to ensure that workers be properly verified for authorization to work in the United States, that statements made under penalty of perjury be truthful, and that companies not participate in illegal conduct.

63. Pursuant to N.C. Gen. Stat. § 64-26, all North Carolina employers "shall verify the work authorization of the employee through E-Verify."

64. Pursuant to N.C. Gen. Stat. § 14-209, one who makes a false statement under oath or affirmation is guilty of perjury.

65. Ms. Nario refused to participate in an unlawful act when she refused to perjure herself on the I-9 certification pursuant to Defendant's policies and practice.

66. Ms. Nario also engaged in activity protected by law when she reported the false I-9 certification process and Defendant's pursuit of business in states where it was not registered.

67. Ms. Nario's employment was terminated because she engaged in this protected activity and she refused to participate in this unlawful activity.

68. As a direct and proximate result of Defendant's conduct, Ms. Nario has suffered and continues to suffer severe mental anguish and emotional physical distress.

69. Ms. Nario has incurred and continues to incur lost wages, loss of earning capacity, medical expenses, and other damages in an amount to be proven at trial.

WHEREFORE Plaintiff Vanessa Nario respectfully requests that this Honorable Court enter judgment in her favor and award her the following relief:

1. That all issues of fact raised by this pleading be tried by a jury;
2. That she recover of Defendant compensatory damages in an amount to be proved at trial;
3. That she recover punitive damages in an amount to be determined by the jury;
4. That she be awarded reasonable attorneys' fees and costs;
5. That she recover pre-judgment and post-judgment interest on all amounts awarded herein; and
6. That she recover all other relief which this Honorable Court deems just and proper.

Respectfully submitted, this the 13th day of September, 2021.

BY: _____
JOSEPH D. BUDD
N.C. Bar No. 44263
OSBORN GAMBALE BECKLEY & BUDD PLLC
3801 Lake Boone Trail, Suite 400
Raleigh, North Carolina 27607
joe@counselcarolina.com
T: 919.373.6422
F: 919.578.3733