IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
VANESSA NARIO,                    )
                                  )
          Plaintiff,              )
                                  )
     v.                           )          1:21CV711
                                  )
NATIONAL ONDEMAND, INC.,          )
                                  )
          Defendant.              )
```

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Before this court is a Motion to Dismiss, (Doc. 8), filed by Defendant National OnDemand, Inc. Defendant argues Plaintiff Vanessa Nario failed to adequately allege facts plausibly showing she engaged in protected activity under the False Claims Act ("FCA"), so she is not entitled to relief. (Doc. 9 at 4–9.) For the following reasons, this court will grant the motion.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff began working as a human resources specialist at National OnDemand on June 29, 2020. (Compl. (Doc. 1) ¶ 7.)[1]

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Plaintiff's job responsibilities included "onboard[ing] both W-2 and 1099 workers." (Id. ¶ 23.)

On July 16, 2020, Defendant asked Plaintiff to certify a prospective employee's I-9. (Id. ¶ 26.) Plaintiff was unable to verify the authenticity of the prospective employee's birth certificate because she only had a photograph, and she "discovered that the photographed birth certificate did not contain a document number, which birth certificates are required to have." (Id. ¶¶ 27-28.) Plaintiff refused to certify the I-9, so Defendant had another employee certify it. (Id. ¶¶ 29-30.)

Plaintiff was concerned about Defendant's I-9 certification process, so she "contacted the United States Citizenship and Immigration Service (USCIS) on July 17, 2020 for an advisory opinion." (Id. ¶ 33.) "USCIS confirmed that Defendant was violating the I-9 certification requirements . . . ." (Id. ¶ 34.) Plaintiff emailed Defendant's human resources director, Tonya Spivey, about Defendant's I-9 verification process. (Id. ¶ 35; Doc. 1-3.)[2] Plaintiff told Ms. Spivey she would not certify

---

[2] Because the emails attached to Plaintiff's Complaint, (Docs. 1-3-1-5), are "integral to and explicitly relied on in the complaint," and their authenticity is not challenged by either party, this court can consider those emails in considering the instant motion to dismiss. Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606-07 (4th Cir. 2015) (internal quotation marks omitted) (quoting Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)).

I-9 forms if it was Defendant's process to use photographs instead of actual copies. (Compl. (Doc. 1) ¶ 36; Doc. 1-3.) Ms. Spivey told Plaintiff that Plaintiff was incorrect, and that Defendant was following applicable laws. (Id. ¶¶ 40–41; Doc. 1-4.)

"Worried by Defendant's insistence that its illegal policies were correct, [Plaintiff] began to review other aspects of Defendant's business . . . ." (Compl. (Doc. 1) ¶ 44.) On July 21, 2020, Plaintiff discovered that Defendant was not registered or in good standing in several states where Defendant conducted business. (Id. ¶ 45.) At 4:40pm that same day, Plaintiff emailed Defendant about Defendant's failure to register in Tennessee and Kentucky. (Id. ¶ 46.) A few minutes later, Ms. Spivey met with Plaintiff in Ms. Spivey's office and fired Plaintiff for "trying to find problems with the company." (Id. ¶ 47 (internal quotation marks omitted); Doc. 1-5.)

Prior to Plaintiff's employment with Defendant, Defendant applied for a loan pursuant to the Paycheck Protection Program ("PPP") under the United States Small Business Administration ("SBA"). (Compl. (Doc. 1) ¶ 12.) As part of the loan application, "Defendant certified that it was 'not engaged in any activity that is illegal under federal, state or local law.'" (Id. ¶ 14 (quoting 13 C.F.R. § 120.110).) According to

the Complaint, Defendant knew this certification was false because "Defendant was illegally submitting I-9 forms to the [USCIS] without properly certifying prospective employees" and "conducting business operations in Tennessee and Kentucky . . . where it was not registered to do so." (Id. ¶¶ 15-16.) The SBA approved Defendant's application for a PPP loan "some time prior to April 7, 2020," over two months before Plaintiff began employment with Defendant. (Id. ¶¶ 17, 21.)

Plaintiff filed a Complaint against Defendant, alleging that Defendant retaliated against Plaintiff in violation of the FCA, 31 U.S.C. § 3730(h), and wrongfully discharged Plaintiff in violation of North Carolina public policy. (Id. ¶¶ 48–69.) Defendant moved to dismiss the Complaint, (Doc. 8), and filed a brief in support, (Br. in Supp. of Mot. to Dismiss ("Def.'s Br.") (Doc. 9)). Plaintiff responded, (Pl.'s Resp. in Opp'n to Mot. to Dismiss ("Pl.'s Resp.") (Doc. 10)), and Defendant replied, (Def.'s Reply to Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss ("Def.'s Reply") (Doc. 11)).

## II.  STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

-4-

Case 1:21-cv-00711-WO-JEP   Document 18   Filed 04/27/22   Page 4 of 15

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Id. When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Id. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom . . . in the plaintiff's favor." Est. of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

### III. ANALYSIS

The FCA imposes liability for anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States or "knowingly makes, uses, or causes to be made or used, a false record or statement material" to such a claim. 31 U.S.C. § 3729(a)(1)(A)-(B). A "claim" is "any request or demand . . . for money or property" made to the United States. § 3729(b)(2)(A). The FCA

-5-

forbids retaliation against employees for "lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h).

There are three elements to an FCA retaliation claim: "(1) [the employee] engaged in protected activity; (2) [the] employer knew about the protected activity; and (3) [the] employer took adverse action against [the employee] as a result." United States ex rel. Grant v. United Airlines Inc., 912 F.3d 190, 200 (4th Cir. 2018).

**A.  Protected Activity**

Section 3730(h) provides for "two types of protected activity—acts 'in furtherance of an [FCA action]' (the 'first prong'), or 'other efforts to stop 1 or more FCA violations]' (the 'second prong')." Id. (alterations in original) (quoting § 3730(h)(1)). In this case, Plaintiff does not allege she engaged in protected activity in furtherance of an FCA action, so only the second prong is relevant. Under the second prong,

> an act constitutes protected activity where it is motivated by an objectively reasonable belief that the employer is violating, or soon will violate, the FCA. A belief is objectively reasonable when the plaintiff alleges facts sufficient to show that he believed his employer was violating the FCA, that this belief was reasonable, that he took action based on that belief, and that his actions were designed to stop one or more violations of the FCA.

-6-

Id. at 201-02. Even if purported protected actions do "not 'lead to a viable FCA action,'" they must "have a nexus to an FCA violation." Id. at 202.

### 1. Defendant's I-9 Certification Process

Plaintiff alleges she "engaged in protected activity when she would not comply with Defendant's illegal and improper I-9 certification process and reported the same to USCIS and Defendant's management." (Compl. (Doc. 1) ¶ 56.) Defendant argues that its allegedly illegal I-9 verification process is not a false claim as defined by the FCA, so Plaintiff was not engaged in protected activity when she reported that improper procedure. (Def.'s Br. (Doc. 9) at 6-7.) This court agrees with Defendant.

Defendant's allegedly illegal and improper I-9 certification process is not "a false or fraudulent claim," § 3729(a)(1)(A), under the FCA because Defendant is not "request[ing] or demand[ing] . . . money or property," § 3729(b)(2)(A), from the United States through Defendant's I-9 certification process. Because Defendant's I-9 certification process does not give rise to an FCA claim, Plaintiff's reporting on that process to her supervisor cannot be characterized as efforts to stop an FCA violation under § 3730(h). Put another way, even if Plaintiff believed Defendant

-7-

was violating the FCA through its I-9 certification process, that belief is not reasonable because it lacks any nexus to an FCA violation. Grant, 912 F.3d at 202.

### 2. Failure to Register Business

Plaintiff does not explicitly allege she engaged in protected activity when she reported Defendant's failure to be registered with the states of Tennessee and Kentucky to Ms. Spivey. (See Compl. (Doc. 1) ¶¶ 48-60.) But even assuming Plaintiff has alleged she was engaged in protected activity when she reported Defendant's lack of registration to Ms. Spivey, this court finds that Defendant's failure to register with states in which it was conducting business is not a "claim" under the FCA, so Plaintiff could not have been engaged in FCA-protected activity when she reported that failure to register to Defendant.

Failing to register as a business with states in which an entity is conducting business is not an FCA violation because in failing to register, the business is not requesting money or property from the United States. See § 3729(b)(2)(A). Because failing to register as a business with a state does not give rise to an FCA claim, Plaintiff's reporting on that process to her supervisor cannot be characterized as efforts to stop an FCA violation under § 3730(h). Again, even assuming Plaintiff

-8-

subjectively believed Defendant was violating the FCA by its failure to register its business in certain states, that belief is not reasonable because it lacks any nexus to an FCA violation.

### 3. PPP Loan Fraud

However, making a false or fraudulent statement to obtain a government-funded loan violates the FCA. See United States v. Eghbal, 475 F. Supp. 2d 1008, 1013-16 (C.D. Cal. 2007) (finding the defendants liable under the FCA when they made false statements on HUD-insured loan applications). Defendants do not contest that fraudulently demanding money from the United States through the PPP loan program would constitute a "claim" under the FCA. (See Def.'s Br. (Doc. 9) at 8-9.) Rather, Defendants argue Plaintiff did not engage in protected activity related to Defendant's PPP loan. (Id.)

To engage in protected activity related to Defendant's PPP loan, Plaintiff must have been "motivated by an objectively reasonable belief that [Defendant] is violating, or soon will violate, the FCA." Grant, 912 F.3d at 201. Although purported protected activity does not have to "lead to a viable FCA action," the protected activity must "have a nexus to an FCA violation." Id. at 202 (internal quotation marks omitted).

The fatal flaw with Plaintiff's FCA claim is that she fails to allege facts plausibly suggesting she engaged in protected activity that had a nexus to an FCA violation. To the contrary, the allegations in the Complaint plausibly suggest Plaintiff was only aware of the I-9 activity and was unaware of the PPP loan. Plaintiff alleges she "engaged in protected activity when she would not comply with Defendant's illegal and improper I-9 certification process and reported the same to USCIS and Defendant's management." (Compl. (Doc. 1) ¶ 56.) And she alleges "Defendant admitted to firing [her] for investigating whether Defendant was engaged in other illegal practices." (Id. ¶ 55.) Crucially, Plaintiff does not allege she knew or reported anything related to the PPP and the FCA.

The allegation which comes closest to alleging Plaintiff was motivated by an objectively reasonable belief Defendant was violating the FCA is the allegation that "Defendant knew Ms. Nario was concerned about Defendant's potential violation of the [FCA] or other criminal statutes related to perjury as a result of the I-9 verification process Defendant had in place." (Id. ¶ 58.) However, that allegation is not plausibly pled because Plaintiff never alleges she was aware of the PPP loan and a possible FCA violation as to that loan while employed and before she was terminated, nor does she allege that she made any

-10-

statements to anyone, or engaged in any activity, concerning false or fraudulent claims made on the PPP loan application.

Moreover, it does not appear Plaintiff could have made such allegations regarding the PPP loan. Although Plaintiff alleges irregularity in the I-9 certification process during her employment with Defendant from June 29, 2020 through July 21, 2020, (id. ¶¶ 26-36), Plaintiff makes no plausible allegations about information she may have had about the PPP loans because Plaintiff provides no basis, even on information and belief, as to her knowledge of the truth or falsity of the information contained in the PPP loan application.

All of Plaintiff's knowledge and activity, as plausibly alleged in the Complaint, is related to alleged issues with the propriety of Defendant's I-9 process. (See, e.g., id. ¶¶ 51, 56.) Plaintiff's activity is not plausibly alleged to bear any nexus whatsoever to the PPP loan or the FCA. It may be true that impropriety in Defendant's I-9 program could conceivably relate to the PPP loan and an FCA violation if Plaintiff had knowledge about Defendant's PPP loan, but Plaintiff has provided no allegations from which this court can infer Plaintiff was aware of Defendant's PPP loan to create such a nexus to a potential FCA violation. Plaintiff makes no allegation suggesting that, during her short tenure with Defendant, she became aware that

-11-

Defendant had applied for and received a PPP loan, or that she became aware of Defendant's statements on its loan application. It is implausible to contend a nexus exists between the I-9 allegations and a loan of which Plaintiff does not allege she was aware.

In sum, this court finds Plaintiff has failed to sufficiently plead facts plausibly showing she engaged in protected activity that has a nexus to an FCA violation. Therefore, Defendant's motion to dismiss should be granted as to Plaintiff's FCA retaliation claim.

**B.** **Wrongful Discharge Claim**

Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."

In Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995), the Fourth Circuit recognized that under § 1367(c)(3), "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." See also ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012) ("Section 1367(c) recognizes courts' authority to decline to exercise supplemental jurisdiction in limited circumstances, including . . . where the

court dismisses the claims over which it has original jurisdiction."); Hinson v. Nw. Fin. S.C., Inc., 239 F.3d 611, 616–17 (4th Cir. 2001) (stating that, "under the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met"). "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. . . . [I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

In Plaintiff's response brief, she acknowledges that this court may decline to exercise supplemental jurisdiction over the wrongful discharge claim. (Pl.'s Resp. (Doc. 10) at 6.) In the absence of a plausible claim that comes within federal question

-13-

jurisdiction, this court declines to exercise supplemental jurisdiction over the remaining state law claim.[3]

## IV. CONCLUSION

For the foregoing reasons, this court will grant Defendant's Motion to Dismiss, (Doc. 8). Additionally, this court will deny as moot Plaintiff's Motion to Compel Discovery, (Doc. 12), and Defendant's Motion to Stay Discovery, (Doc. 14).

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (Doc. 8), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's FCA retaliation claim (Count I) is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's wrongful discharge claim (Count II) is dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Discovery, (Doc. 12), is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant's Motion to Stay Discovery, (Doc. 14), is **DENIED** as moot.

---

[3] While Defendant's Motion to Dismiss was pending before this court, Plaintiff filed a Motion to Compel Discovery, (Doc. 12), and a memorandum in support, (Doc. 13). The next day, Defendant filed a Motion to Stay Discovery, (Doc. 14), and a brief in support, (Doc. 15). Because this court will grant Defendant's Motion to Dismiss, those pending discovery motions will be denied as moot.

-14-

A judgment reflecting this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 27th day of April, 2022.

/s/ William L. Osteen, Jr.
United States District Judge